## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**DEBRA WAGNER, as administrator**     :
**Ad Prosequendum for the heirs-at-law of** :
**CHRISTIE DAWN SOLARO**     :     **Civil Action No.:**
**(FORMISANO), deceased, and as General:**
**Administrator of the Estate of CHRISTIE:**
**DAWN SOLARO (FORMISANO),**     :     **COMPLAINT & JURY TRIAL DEMAND**
**deceased, and Individually,**     :
    :
    **Plaintiff**     :
    :
    **v.**     :
    :
**JOHN FORMISANO, THE CITY OF**     :
**NEWARK POLICE DEPARTMENT**     :
**& THE CITY OF NEWARK**     :
    :
    **Defendants**     :

---

Plaintiff Debra Wagner, as Administrator Ad Prosequendum for the heirs-at-law of CHRISTIE DAWN SOLARO (FORMISANO), deceased, and as General Administrator of the Estate of CHRISTIE DAWN SOLARO (FORMISANO), deceased, and Individually, by her attorneys, Bio & Laracca, P.C., complaining of the Defendants John Formisano, the City of Newark Police Department and the City of Newark alleges as follows:

1. On July 14, 2019, Christie Dawn Solaro (Formisano) was shot and killed by defendant John Formisano, a Newark Police Department Lieutenant.

2. This is an action brought by the Plaintiff against the Defendant, the City of Newark and their agent and servant, former police Lieutenant John Formisano for his use of excessive force under the color of

1

state law in violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.A § 1983.

3.  Plaintiff alleges that the City of Newark failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise properly equip and control officers including those who are known, or who should have been known, to engage in the use of excessive force and/or deadly force and those known to be a danger to themselves or to the community.

4.  Newark had a duty, but failed to implement and/or enforce training, policies, practices and procedures for the Newark Police Department that respected Plaintiff's constitutional rights.

5.  Defendant City's failure to adequately supervise, discipline, and train Defendant Formisano, failure to implement the necessary policies and procedures, and affirmative, implementation of unconstitutional policies caused Plaintiff's unwarranted and excruciating physical and mental anguish and death.

6.  For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages.

**PARTIES**

7.  Plaintiff, Debra Wagner, as Administrator Ad Prosequendum for the heirs-at-law of Christie Dawn Solaro (Formisano), deceased, and as General Administrator of the Estate of Christie Dawn Solaro (Formisano), deceased, is an adult individual and a resident of the State of New Jersey.

8.  Defendant John Formisano was at all relevant times a police officer with the Newark Police Department.

9.  Defendant the City of Newark is a municipality duly organized and existing under the laws of the State of New Jersey.  Defendant Newark is responsible for the funding, budget, policies, operation and

oversight of the Newark Police Department.  Newark may be served via the Law Department at City Hall, Rom 316, Newark, NJ 07102.

## JURISDICTION AND VENUE

10.     Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of Christie Solaro.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

11.     Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the District of New Jersey.

## THE SHOOTING OF CHRISTIE DAWN SOLARO (FORMISANO), DECEASED

12.     On Sunday, July 14, 2019, decedent Christie Dawn Solaro (Formisano) was at her home in Morris County, New Jersey, along with Timothy Simonson and her two minor children.

13.     Around 11:30 p.m., Timothy Simonson and decedent Christie Dawn Solaro (Formisano) were alerted to a light shining around the yard.

14.     Decedent Christie Dawn Solaro (Formisano) got up to see what was going on.

15.     The light was coming from Defendant John Formisano.

16.     Formisano was wearing his police uniform and carrying his service weapon.

17.     Formisano came into the house and shot the Decedent Christie Dawn Solaro (Formisano) multiple times.

18.     Formisano then proceeded to shoot Timothy Simonson.

19.     Formisano then shot decedent Christie Dawn Solaro (Formisano) several times in the home and then proceeded to chase her down the street shooting her additional multiple times outside, killing her before fleeing the scene.

21.     Timothy Simonson called 911.

22.     A SWAT team was assembled to respond to the residence.

23.     The entirety of the time Christie Dawn Solaro' (Formisano) children were present and crying.

24.     Formisano was captured the morning after the shooting 30 miles away in Livingston, New Jersey.

25.     Formisano was charged with murder and related charges.

26.     After his arrest he was held at two separate mental health facilities, the Ann Klein Psychiatric Facility in Trenton and the psychiatric unit of St. Clare's Hospital in Boonton.

27.     He has pled not guilty by reason of insanity.

28.     Upon information and belief, Formisano's deteriorating mental state was a cause of concern among fellow officers prior to the shooting.

29.     Upon information and belief, prior to the shooting, the Newark Police Department knew that Formisano had made statements indicating his intent to injure himself and others.

30.     In particular, upon information and belief, Formisano had exhibited suicidal behavior and expressed self-injurious thoughts while in the presence of fellow officers.


**<u>FAILURE OF THE NEWARK POLICE DEPARTMENT</u>**

*Inadequate Supervision of John Formisano*

31.     The limited material that is discoverable in the public domain indicates that John Formisano was accused of serious misconduct just four years after becoming a police officer.

32.     State civil service records indicate that Formisano was suspended for 35 days, as evidence of serious misconduct.

33.     That Formisano was actually disciplined is particularly stark and raises questions about his fitness for duty in light of the Newark Police Department was notorious for its consistent and systemic failure to properly supervise officers.

34.     Indeed, following litigation brought by the ACLU of New Jersey which identified 418 serious police abuse cases that went uncorrected between 2008 and 2010 alone, the City of Newark entered into a consent decree placing the Newark Police Department under federal oversight.

35.     Despite federal oversight, Newark remains ill equipped to supervise its officers.

36.     While most professional departments like Philadelphia, New York, Chicago, and Los Angeles have automatic mechanisms for the review of officer behavior, Newark does not.

37.     These mechanisms are designed to identify problematic officers and provide retraining and review mechanisms to prevent inappropriate conduct by officers.

38.     According to an analysis conducted by NJ.com's force report, for conduct between the years 2012 and 2016, an automatic review mechanism would have triggered review for hundreds of officers.

39.     During that time period, Chicago's review mechanism would have flagged 432 Newark Police officers for review.

40.     New York City's review mechanism would have flagged 374 Newark police officers for review.

41.     Los Angeles' system would have flagged 49 police officers.

42.     Newark's lack of review mechanisms created a culture of impunity where officers believed they were above the law.

43.     Based on the limited publicly available information, John Formisano was reported for his use of force at least two times between 2012 and 2016.

44.     It is likely that the full personnel and internal affairs file will reveal significantly more instances of potential and actual misconduct.

45.     Newark's failure to supervise John Formisano was not limited to his use of force or allegations of misconduct, the City also failed to intervene when Formisano's deteriorating mental health created an obvious risk that he would harm himself or others.

46.     As noted *supra*, following the shooting, Formisano was held in mental health facilities for months due to his deteriorated mental health.

47.     Additionally, Formisano has entered a plea of not guilty by reason of insanity in the criminal proceedings related to this matter.

48.     Upon information and belief, Formisano's deteriorating mental state was a cause of concern among fellow officers prior to the shooting.

49.     Upon information and belief, prior to the shooting, the Newark Police Department knew that Formisano had made numerous statements indicating his intent to injure himself and others.

50.     Upon information and belief, that in particular, Formisano had exhibited suicidal behavior and expressed self-injurious thoughts while in the presence of fellow officers.

51.     Despite the above alleged expressed suicidal ideations, Newark failed to take any steps to remove Formisano from duty, reclaim his service weapon, or otherwise protect the public from the very real threat of a mentally unstable man with full police powers and a firearm.

52.     This failure is unsurprising given the Newark Police Department's lack of any policy of any kind related to officers exhibiting obvious mental health issues.

*Lack of Mental Health Reporting Policies and Periodic Evaluations*

53.     The Newark Police Department requires all new applicants to be evaluated by a psychologist for mental fitness, recognizing a stable and healthy mental makeup is not only critical to the duties of a police officer but central to their ability to keep communities safe.

54.     However, after an officer completes the initial screening, they are never again subject to a mental health assessment or check-up no matter how long they are on the force, except for mandatory review following a discharge.

55.     This means that John Formisano went 24 years without a mental health evaluation, from the time he was hired until his mental breakdown and subsequent shooting of Tim and Christie.

56.     The Newark Police Department does not have any policies requiring periodic mental health screenings.

57.     The Newark Police Department does not have any policies requiring a mental health evaluation for an officer who expresses the desire to harm themselves or others.

58.     The Newark Police Department does not have any policies requiring officers to report when they are aware of a fellow officer's deteriorating mental health or desire to harm themselves or others.

59.     Upon information and belief, the Newark Police Department does not provide any mental health resources to its officers.

## COUNT I:  EXCESSIVE FORCE
### Plaintiff v. John Formisano

60.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

61.     Plaintiff would show that Defendant Formisano's actions on the date at issue in this Complaint deprived plaintiff of her constitutional rights, specifically her rights secured under the Fourth Amendment.

62.     Plaintiff would show that Defendant Formisano failed to act as an objectively reasonable police officer would have acted in the same or similar circumstances.  That is, Defendant Formisano, without legal or

necessary justification or need to do so, used excessive force as described above and caused severe physical and mental injury to plaintiff, and ultimately, the death of decedent Christie Dawn Solaro (Formisano).

63.     The force used by Defendant Formisano was objectively unnecessary, excessive and unreasonable under the circumstances, as Plaintiff did not pose an immediate threat to the safety of Defendant Formisano or others.  Defendant Formisano embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Plaintiff to suffer extreme and severe physical pain and injury, as well as mental and emotional distress, anxiety, terror and agony and ultimately her death.

64.     As a result of Defendant's conduct, decedent suffered greatly and endured excruciating pain and suffering.  Additionally, Plaintiff has suffered lost wages and a loss of earning capacity.

WHEREFORE, Plaintiff demands judgment in her favor, and against Defendant Formisano pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred Million Dollars ($100,000,000.00), including interest, delay damages, costs of suit, general and specific damages, punitive and exemplary damages as provided by law, attorneys' fees, and any other remedies legally appropriate.

### COUNT II:  ASSAULT AND BATTERY
**Plaintiff v. John Formisano**

65.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

66.     At or about the dates and places alleged herein, Defendant Formisano without provocation, warrant, necessity, or legal justification, assaulted and battered Plaintiff by pointing his Newark Police Department-issued firearm at plaintiff and shooting her multiple times thereby causing her death.

67.     As a result of Defendant's conduct, decedent suffered greatly and endured excruciating pain and suffering.  Additionally, Plaintiff has suffered lost wages and a loss of earning capacity.

WHEREFORE, Plaintiff demands judgment in her favor, and against Defendant Formisano, in an amount in excess of One Hundred Million Dollars ($100,000,000.00), including interest, delay damages, costs

of suit, general and specific damages, punitive exemplary damages, and other damages legally appropriate at the time of jury trial.

### COUNT III:  MUNICIPAL LIABILITY
**Plaintiff v. City of Newark**

68.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

69.     The conduct of Defendant Formisano as set forth in the preceding paragraphs evidences the excessive and unreasonable use of force in violation of Plaintiff's constitutional rights.

70.     The conduct set forth herein, as well as supervisory failures of the Newark Police Department demonstrates that the City of Newark failed to properly supervise officers, in particular Defendant Formisano. As a result of the supervisory, a violent and unstable Defendant Formisano was permitted to continue policing without intervention and with impunity.  This supervisory failure was a moving force in the deprivation of Plaintiff's constitutional rights.

71.     As a result of Defendant's conduct, decedent suffered greatly and endured excruciating pain and suffering.  Additionally, Plaintiff has suffered lost wages and a loss of earning capacity.

WHEREFORE, Plaintiff demands judgment in her favor, and against Defendant, the City of Newark, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred Million Dollars ($100,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT IV:  NEGLIGENT SUPERVISION
**Plaintiff v. City of Newark**

72.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

73.     Defendant, the City of Newark, knew or had reason to know of Defendant Formisano's deteriorating mental health and his unfitness and dangerous attributes.  Further, the City was aware or should have been aware that Formisano's deteriorating mental health and his unfitness and dangerous attributes were likely to create a foreseeable of harm to others.

74.     Nonetheless, the City took no action to take away Formisano's firearm and badge, let alone assist in getting him mental health treatment.

75.     Despite Formisano's alleged expressed intent to harm himself or others, the City permitted him to continue to go out every day cloaked with the authority of the state and armed with a deadly weapon.

76.     The City's negligence under state law resulted in the murder of Christie Dawn Solaro (Formisano) and the nearly deadly shooting of Timothy Simonson.

77.     As a result of Defendant's conduct, decedent suffered greatly and endured excruciating pain and suffering.  Additionally, Plaintiff has suffered lost wages and a loss of earning capacity.

WHEREFORE, Plaintiff demands judgment in her favor, and against Defendant, the city of Newark, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages legally appropriate at the time of jury trial.


**COUNT V**

78.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

79.     The Plaintiff served a Notice of Claim for her damages in the form prescribed by N.J.S.A. 59:8-9, and signed by the Plaintiffs' representative, upon the public entity defendants.

80.     At the time of the accident, there was in effect in the State of New Jersey, a Survival Statute, N.J.S.A. 2A:15-3, and Plaintiff, Debra Wagner, as Administrator Ad Prosequendum for the heirs-at-law of

Christie Dawn Solaro (Formisano), deceased, and as General Administrator of the Estate of Christie Dawn Solaro (Formisano), deceased, brings a survival action pursuant to the provisions thereof for damages of any kind and type recoverable under the Survival Statute, including, but not limited to, punitive damages.

81.     Letters of General Administration have been issued to plaintiff, Debra Wagner, and she is empowered and authorized to bring a survival action pursuant to N.J.S.A. 2A:15-3.

82.     At the time of the incident set forth above, there was in effect in the State of New Jersey, a Death Statute, N.J.S.A. 2A: 31-1, et seq. and Plaintiff Debra Wagner, as Administrator Ad Prosequendum for the heirs-at-law of Christie Dawn Solaro (Formisano), deceased, brings this action pursuant to provisions thereof for the benefit of the next of kin of the decedent.

83.     Letters of Administration Ad Prosequendum were granted by the Surrogate of **Morris** County, New Jersey, to plaintiff Debra Wagner, for the purpose of prosecuting a wrongful death claim on behalf of the next of kin of Christie Dawn Solaro (Formisano), deceased, against defendants herein, pursuant to N.J.S.A. 2A:31-2 of the Death Statute.

84.     Upon the death of decedent, Christie Dawn Solaro (Formisano), she is survived by her minor children, who were dependent upon the decedent and entitled to take decedent's intestate personal property and who have sustained pecuniary injuries resulting from her death.  In addition, the decedent was also survived by Debra Wagner, her mother, who has sustained pecuniary injuries resulting from her death.

85.     This action has been commenced within two years after the death of the said Christie Dawn Solaro (Formisano).

WHEREFORE, Plaintiff, demands judgment against the Defendants herein, both jointly and/or severally, for damages including but not limited to:  compensatory damages, punitive damages, attorney's fees, costs of suit, interest, and such other relief as the Court deems just and appropriate and also recoverable under the Survival Statute, N.J.S.A. 2A:15-3, and under the Death Statute, N.J.S.A. 2A:31-1, et seq.

**COUNT VI**

86.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

87.     Letters of General Administration have been issued to plaintiff, Debra Wagner.

88.     As a direct and proximate result of the above-mentioned acts and/or omissions of the defendants, plaintiff decedent was caused to sustain great pain and suffering from the time of the occurrence of July 14, 2019 until the time of her death on July 15, 2019.  During that time, decedent suffered greatly and endured excruciating pain and suffering.

89.     As a further direct and proximate result of the above-mentioned acts and/or omissions of the defendants, funeral services were held in memory of decedent and decedent was buried.  Substantial and reasonable expenses were incurred for decedent's funeral and burial.

WHEREFORE, Plaintiff Debra Wagner, as General Administrator Ad Prosequendum for the heirs-at-law of Christie Dawn Solaro (Formisano), deceased, and as General Administrator of the Estate of Christie Dawn Solaro (Formisano), demands judgment against the Defendants herein, both jointly and/or severally, for damages, interest, attorneys fees, costs of suit and for any and other relief as the court may deem proper, equitable, and just, and recoverable under the Survival Statute, N.J.S.A. 2A:15-3, including, but not limited to, punitive damages.

**COUNT VII**

90.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

91.     Plaintiff, Debra Wagner, individually, is the mother of the decedent.

92.     Prior to the fatal shooting as described above, decedent resided with her minor children in Jefferson Township, New Jersey.

93.    As a further direct and proximate result of the above-mentioned acts and/or omissions of Defendants, Plaintiff, Debra Wagner, individually, has suffered pecuniary loss as a result of the death of the decedent.

WHEREFORE, Plaintiff, Debra Wagner, Individually, demands judgment against the Defendants herein, both jointly and/or severally, for damages, together with attorney's fees and costs of suit, and any other and further relief as the court may deem proper, equitable, and just and also recoverable under the Death Statute, N.J.S.A. 2A:31-1, et seq.

Respectfully submitted,

/s/ Marco A. Laracca

MARCO A. LARACCA, ESQ.
Bio & Laracca, P.C.
331 Central Avenue
Orange, NJ  07050
(973) 675-6006
mlaracca@bioandlaracca.com

Dated: 6/28/2021